BRYANT, Judge.
 

 *372
 
 Where the trial court failed to advise juvenile-appellant of his right against self-incrimination before he testified and incriminated himself, we reverse the trial court's orders on adjudication and delinquency and order a new trial.
 

 On 9 May 2017, the Honorable Judge David H. Strickland presided over an adjudication hearing in the matter of J.B. (hereinafter juvenile-appellant) in Mecklenburg County Juvenile Court. The Mecklenburg County Department of Juvenile Justice and Delinquency Prevention filed seven petitions alleging juvenile-appellant committed five counts of assault on a government employee, one count of simple assault and one count of communicating threats. At the hearing, the State elected to dismiss six petitions and proceeded on one petition for assault on a government employee, a teacher.
 

 On the morning of Friday, 21 October 2016, Jessica
 
 [1]
 
 , juvenile-appellant's teacher at Lincoln Heights Academy, supervised her students as they ate breakfast in the cafeteria. At the time of the incident, fourteen-year-old juvenile-appellant, had been a student in Jessica's class since August 2016. Jessica testified that during breakfast, she noticed juvenile-appellant had turned around from his table and was talking to a student at another table. When she asked juvenile-appellant to turn around, he responded "F* *k you, b* * *h" and threw a pint-sized carton of milk at her. The carton was closed when juvenile-appellant threw it, but opened as it hit Jessica's face resulting in irritation to her eye from the milk. Jessica went to urgent care but suffered no major injuries. Jessica was the State's only witness, and the State rested after her testimony, offering no additional evidence.
 

 Juvenile-appellant made a motion to dismiss at the close of the State's case, and the trial court denied his motion. Defense counsel asked if they could call juvenile-appellant as a witness. The trial court said "Yes sir" and had juvenile-appellant take the witness stand. On direct-examination, juvenile-appellant
 
 *371
 
 testified that while he was in the cafeteria, a
 
 *373
 
 girl stepped on his shoe. When Jessica was made aware of the incident, her response was, "They [sic] just shoes." "I got mad and threw the milk carton," he stated, "[b]ecause they [sic] was new shoes, and then I was mad. I mean she-because she-the way she said it, she was like, 'Man, they [sic] just shoes.' And then I just got mad and just threw the milk carton." He further admitted that he intended to hit Jessica in the moment out of frustration. Juvenile-appellant rested his case and renewed his motion to dismiss, which was denied.
 

 After closing arguments, the trial court informed juvenile-appellant that he had forgotten to advise him of his right against self-incrimination prior to his testimony. The trial court asked juvenile-appellant if he understood and juvenile-appellant replied "yes." Juvenile-appellant's defense counsel moved for dismissal on the grounds that the trial court should have advised juvenile-appellant of his right against self-incrimination prior to his testimony. The trial court denied the motion, and juvenile-appellant's counsel noted his exception for the record.
 

 The trial court adjudicated juvenile-appellant delinquent as to the charge of assault on a government official and entered a Level III disposition order sentencing juvenile-appellant to six months of incarceration at a youth development center. Juvenile-appellant appealed.
 

 On appeal, juvenile-appellant asserts that the trial court failed to advise him of his constitutional right against self-incrimination prior to allowing his testimony. Specifically, juvenile-appellant argues he was prejudiced by the trial court's violation of the statutory mandate in section 7B-2405 of our General Statutes because the testimony was incriminating, and therefore, the violation constituted reversible error. We agree.
 

 N.C. Gen. Stat. § 7B-2405 delineates the judicial process to be followed in adjudication proceedings to ensure the protection of juvenile rights. "In the adjudication hearing, the court
 
 shall
 
 protect the [the privilege against self-incrimination] ... to assure due process of the law." N.C.G.S. § 7B-2405 (2017) (emphasis added). "The plain language of N.C. Gen. Stat. § 7B-2405 places an affirmative duty on the trial court to protect the rights delineated therein during a juvenile delinquency adjudication."
 
 In re J.R.V.
 
 ,
 
 212 N.C. App. 205
 
 , 210,
 
 710 S.E.2d 411
 
 , 414 (2011). "[A]t the very least, some colloquy [is required] between the trial court and juvenile to ensure the juvenile understands his right against self-incrimination before choosing to testify at his adjudication hearing."
 
 Id.
 
 at 209,
 
 710 S.E.2d at 413
 
 . Thus, failure to follow the statutory mandate
 
 *374
 
 when conducting an adjudication hearing constitutes reversible error unless proven to be harmless beyond a reasonable doubt.
 
 See
 

 id.
 
 at 208,
 
 710 S.E.2d at 413
 
 .
 

 Similarly in
 
 J.R.V.
 
 , the trial court failed to follow the statutory mandate to engage in a colloquy with the juvenile to protect his constitutional right against self-incrimination, and it was determined that the failure was error. However, in
 
 J.R.V.
 
 , our Court of Appeals held it was not prejudicial error where the juvenile's testimony denied the criminal allegations against him and was not incriminating.
 
 See
 

 id.
 
 at 209-10,
 
 710 S.E.2d at 414
 
 .
 

 Here, in the instant case, juvenile-appellant's testimony, which admitted that he committed an assault on his teacher, was incriminating and therefore prejudicial. The trial court had not inquired whether juvenile-appellant understood his right against self-incrimination before juvenile-appellant testified. It was only after juvenile-appellant offered his testimony that the trial court stated:
 

 You can stand up, please, sir. I forgot to advise you that-prior to your testimony that you do have the right to remain silent and that any statements you said in your testimony.... Just you understand that, in this type of hearing, that anything you say about the charge may be used against you as evidence. Do you understand that?
 

 Directly asking whether juvenile-appellant understood those rights after his testimony was given is not sufficient to satisfy the requirements under § 7B-2405. Therefore, the trial court's actions were clearly erroneous.
 

 *372
 
 Accordingly, in finding error in the trial court's failure to advise juvenile-appellant of his right against self-incrimination, we find the error was not harmless beyond reasonable doubt. Prior to juvenile-appellant's testimony, the State offered Jessica's testimony to establish the basis of the assault charge that juvenile-appellant threw the milk carton hitting her in the face. Here, during his testimony, juvenile-appellant made incriminating statements as he admitted to throwing the milk carton out of frustration. Not only was juvenile-appellant's admission to the assault charge incriminating, the State used the admission to further support the assertion that juvenile-appellate was a "disruptive student" deeming incarceration as the only suitable remedy for his actions. This confirms that juvenile-appellant's testimony and the manner in which the State attempted to use the testimony was prejudicial. Had juvenile-appellate been properly advised of his right, he quite possibly would not have implicated himself.
 

 *375
 
 As the trial court failed in its affirmative duty to protect juvenile-appellant's constitutional right against self-incrimination, the trial court's orders of adjudication and delinquency are
 

 REVERSED AND REMANDED FOR NEW TRIAL.
 

 Judges HUNTER, JR., and ARROWOOD concur.
 

 [1]
 

 For privacy purposes, we do not use the last name of the teacher.